**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MALLORIE HAMLIN, an individual,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 15-CV-731-TCK-FHM |
| | ) |
| **SMG HOLDINGS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 30), wherein Defendant moves for summary judgment on Plaintiff's two remaining claims: (1) Title VII sexually hostile work environment; and (2) negligent supervision under Oklahoma law.[1]

**I.      Factual Background**

Plaintiff Mallorie Hamlin is a twenty-four year old female classified as mentally retarded. She receives Social Security disability checks payable to her mother on a monthly basis based on this condition. Plaintiff needs assistance in remembering to bathe, wear clean clothes, and take care of herself. At relevant times, she has resided with her mother or grandmother, who drive her to her place of employment. Plaintiff has difficulty recalling when things occurred and placing events in chronological order. At the time of relevant events, Plaintiff was not taking any medication.[2]

---

[1] On January 6, 2017, Plaintiff dismissed her Americans with Disabilities Act ("ADA") claim and Title VII retaliation claim.

[2] In part 9 of its motion in limine (Doc. 43), Defendant objects to the admissibility of evidence regarding Plaintiff's mental limitations as irrelevant and not supported by medical testimony. The Court finds that Plaintiff's general mental condition is relevant and need not be offered by medical experts. Therefore, Defendant's request to exclude any evidence of Plaintiff's disability is denied and such evidence is admissible for purposes of summary judgment and trial.

In July of 2012, when she was approximately 20 years old, Plaintiff was hired by Defendant SMG Holdings, Inc. to work part time as an Environmental Services Attendant ("ESA") at the BOK Center. An ESA's duties include cleaning and disposing of waste in a designated area. A "job coach" from a vocational rehabilitation service helped Plaintiff obtain the interview and attended the interview with her. Plaintiff's work schedule is sporadic and based on the number of events held at the BOK Center. Plaintiff worked the following total amount of hours during the past four years: (1) 2013 - 435.25; (2) 2014 - 477.46; (3) 2015 - 444.47; and (4) 2016 - 375.05. Plaintiff has been continuously employed as an ESA since she was hired in 2012.

Plaintiff's direct supervisor, David Welch ("Welch"), his supervisor, Angela Shelton ("Shelton"), and Defendant's Human Resources Manager, Allen Curd ("Curd"), have been aware Plaintiff suffered from some type of disability since the outset of her employment. Specifically, Shelton was aware that Plaintiff was not at an age-appropriate developmental stage and that Plaintiff had difficulty comprehending instructions and communicating her thoughts. When Plaintiff was hired, Shelton and Curd discussed that Plaintiff may need "extra help" and that she should be kept away from the public during events. As another example of Plaintiff receiving "extra help," Welch wrote down Plaintiff's schedule for her and helped ensure her mother or grandmother received it.

Plaintiff claims that, in November or December of 2013, a co-worker named Kevin Williams ("Williams") raped her on two different occasions while they were at work. Williams is a part-time employee in "operations" and works during BOK events. The first alleged rape occurred in a laundry room behind a washer and dryer ("laundry incident"), and the second occurred in a catering area ("catering incident") (collectively "2013 incidents"). Plaintiff testified that she told Welch about the laundry incident immediately after it occurred:

> Q. After the first time in the laundry room, did you tell anybody what had happened?
> A. Told David.
> Q. Do you remember what you told David?
> A. Yeah. I told him, I said, Dave, can I go home. That's all I said because Kevin was bothering me, so he let me go home and come back after that.
> Q. So you didn't tell Dave that Kevin Williams had just had sex with you in the laundry room?
> A. Yes. Yes, I told him that.
> Q. You did tell him that?
> A. Yes.
> Q. Okay. Do you remember when you told him that?
> A. No.
> Q. Did you tell anybody at home?
> A. My mom and Clinton and that's all I told, two people.[3]

(Pl.'s Dep. 27:8-25 (footnote added).) Later in her deposition, Plaintiff stated she first told Welch about the 2013 incidents in May of 2014. Welch denies that Plaintiff ever told him about either of the 2013 incidents. However, Welch admits that a co-worker reported seeing Plaintiff and Williams leaving the laundry area in late 2013.

On December 6, 2013, Plaintiff's fiancé called the BOK Center security desk and reported that Plaintiff was raped at work by an individual named Kevin. A BOK security officer reported this to Curd. On December 10, 2013, Curd and Shelton met with Plaintiff regarding the phone call and told her the details of the call. During this meeting, Plaintiff denied that Williams assaulted her and told them she and Williams were just friends. Neither Plaintiff's mother or grandmother were present. Curd ended his investigation at that point without interviewing Williams or other employees. He told Plaintiff to report to him or Shelton if she ever felt threatened. Following the fiancé's call and meeting with Plaintiff, Shelton instructed Plaintiff's supervisor and Williams'

---

[3] Plaintiff's mother denies that Plaintiff told her about the 2013 incidents at that time.

3

supervisor that Plaintiff and Williams could not interact in any manner. Welch testified that "if I was to see him in her area conversing with her even as far as just watching her, to notify, you know, to approach him and tell him . . . not to be in that area." (Welch Dep. 37:16-19.) From December 10, 2013 until May 10, 2014, Plaintiff and Williams did not have any interaction at work and were not scheduled at the same time.[4]

On May 10, 2014, Plaintiff and Williams were scheduled to work during the same event. Plaintiff claims Williams forcefully kissed her in a freight elevator without her permission, led her by the elbow to a supply closet, took out his penis, shoved her shoulders down, and told her to "suck his dick" ("closet incident"). Plaintiff refused to do so, and they left the supply closet. Williams did not force her to perform any sexual acts. Another employee saw them enter and leave the closet and reported this to Welch. Welch told Plaintiff to stay in her area. Plaintiff told Welch she wanted to leave work for the night, and he permitted her to do so. She called her mother or grandmother, and Welch walked her down to security. While waiting for her ride, Plaintiff told the security guard on duty about the assault. The security guard reported it to Williams' supervisor. Shelton learned of the incident that same night and instructed Welch to gather witness statements.

That night or the next day, Plaintiff told her mother about the closet incident and also discussed the 2013 incidents. Her mother claims this was the first time she learned of the 2013 incidents. Plaintiff's mother does not know whether Plaintiff used the word "no" during the 2013

---

[4] In part 7 of its motion in limine, Defendant objects to the admissibility of the 2013 incidents based on failure to exhaust administrative remedies. For reasons explained below, the Court finds the 2013 incidents are part of the same alleged hostile work environment and may be considered at trial. Therefore, Defendant's motion in limine to exclude the 2013 incidents is denied.

incidents. Sometime after the closet incident, Plaintiff's grandmother also learned about the 2013 incidents. She formed the impression the sex was non-consensual because:

> she said he threw her down. He pulled her pants, the first – first incident, I think, in the laundry room was that he pulled her pants down and stuck it inside of her. And the second one was in the catering area where he pushed her down and pulled her pants down from behind and stuck it inside of her again.

(Teasley Dep. 11:4-13.)

On May 12, 2014, Curd received the witness statements gathered by Welch and began his investigation of the closet incident. Plaintiff was asked to come to the BOK Center for a meeting with Curd and Shelton around 10:00 a.m. on May 13, 2014, a time she was not scheduled for work. Plaintiff's grandmother, who drove her to the BOK Center, was not permitted to attend the meeting. Plaintiff met with Curd and Shelton for over two hours. During this meeting, Plaintiff informed Curd and Shelton of the closet incident. She also told them, contrary to her previous denial, that Williams had raped her on two occasions in 2013. Plaintiff admits this is the first time she told Curd and Shelton about the 2013 incidents. Plaintiff testified that Curd did not believe her and repeatedly yelled at her and told her to tell the truth, which Curd denies. After breaking for lunch, Plaintiff did not return to the meeting.

On May 14, 2014, Williams was suspended pending the outcome of the investigation. On May 16, 2016, the General Manager of the BOK Center and an SMG Senior Human Resources Manager called Plaintiff's mother and told her to file a police report against Williams. Plaintiff's mother assisted Plaintiff in doing so on May 20, 2014. Plaintiff continued to work while Williams was suspended. In October of 2014, Curd learned the Tulsa Police Department decided not to file charges against Williams. Williams was reactivated for work, and Plaintiff and Williams were

placed on different shifts. Shortly thereafter, Williams quit. Plaintiff continues to work for Defendant.

Plaintiff completed her Equal Employment Opportunity Commission ("EEOC") intake questionnaire, verified affidavit, and other intake documentation on August 13, 2014, which EEOC received on August 15, 2014. On October 8, 2014, Plaintiff submitted her formal EEOC charge of discrimination. On December 22, 2015, Plaintiff filed her Complaint in this case. Plaintiff's two remaining claims are that Defendant violated Title VII by subjecting her to a sexually hostile work environment and that Defendant is liable in tort for negligently supervising Williams.

## II.  Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.     Title VII - Sexually Hostile Work Environment**

    **A.     Exhaustion of Administrative Remedies as to 2013 Incidents**

Prior to filing suit in federal court, a plaintiff must administratively exhaust her claim in a timely fashion by filing a charge with the EEOC. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007). "In states with a state agency that has authority over employment discrimination claims, . . . employees have up to 300 days to file an EEOC charge if they first file a charge with the state agency." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012). It is not disputed that Plaintiff first filed a charge with the Oklahoma agency and that she therefore had 300 days from the unlawful employment practice to file an EEOC charge.

Defendant argues Plaintiff failed to exhaust her administrative remedies as to the laundry and catering incidents because they occurred more than 300 days prior to October 8, 2014, the date she filed her EEOC charge of discrimination. Plaintiff argues the claims were timely because the intake questionnaire submitted in August of 2014 constitutes a "charge" under Tenth Circuit law. *See generally Semsroth v. City of Wichita*, 304 F. App'x 707, 712-714 (10th Cir. 2008) (discussing factors to consider in analyzing whether intake questionnaire is sufficient to qualify as a charge of discrimination). Plaintiff alternatively argues that all evidence may be considered because (1) the closet incident was timely filed, and (2) the 2013 incidents may be considered under the "continuing violation" doctrine relevant to hostile work environment claims.

The Court concludes that all incidents may be considered under the continuing violation doctrine and does not reach the question of whether Plaintiff's intake questionnaire qualified as a charge of discrimination. The United States Supreme Court has explained:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute an unlawful employment practice. 42 U.S.C. § 2000e-

> (5)(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). When analyzing a hostile work environment claim spanning longer than 300 days, "a court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005). "[T]here must be a relationship between acts alleged after the beginning of the filing period and the acts alleged before the filing period." *Id.* "To determine whether these acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts." *Id.* at 1309.

Even assuming the key date is October 8, 2014, the closet incident which occurred on May 10, 2014, is clearly within the limitations period. The prior incidents occurring in November or December of 2013 are the same types of acts committed by the same perpetrator. Further, the crux of Plaintiff's case is that Defendant mishandled the 2013 incidents and failed to end the sexual harassment and/or prevent the 2014 incident. The Court concludes that the 2013 incidents about which Plaintiff complains are part of the same actionable hostile work environment and may therefore be considered in conjunction with Plaintiff's EEOC charge of discrimination filed on October 8, 2014.

### B.     Existence of Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). This includes subjecting an employee to a sexually hostile work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To establish that a sexually hostile work environment existed, a plaintiff must prove that: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005). Defendant challenges the fourth element, arguing that the closet incident was not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

As an initial matter, for reasons explained above, the Court rejects Defendant's exhaustion argument and will consider the scope of conduct by Williams occurring from November of 2013 through May of 2014. Next, the Court must determine whether Plaintiff has created a question of fact as to whether the work environment created by Williams was both objectively and subjectively hostile or abusive. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). The Court must assess the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering the totality of circumstances. *Id.* The Court considers the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's work performance. *Id.* To succeed on the

subjective component of the test, a plaintiff need not show the abuse affected her psychological well-being or tangibly impaired her work performance. *Id* at 665.

Plaintiff has created genuine questions of fact that preclude summary judgment as to whether Williams (1) subjected her to a sexually hostile work environment from November of 2013 to May of 2014 under a "pervasive" theory, or (2) subjected her to one or more incidents of sexual assault that were sufficiently "severe" to create an abusive working environment. Plaintiff has presented evidence that Williams had non-consensual sex with her on two occasions in late 2013, kissed her without permission in May 2014, and exposed his penis to her without her permission in May 2014. Whether viewed as "pervasive" sexual assault or several "severe" incidents of physical abuse, these types of sexual harassment could "clearly be objectively viewed as threatening and severe." *Id.* at 667. In fact, the Tenth Circuit has indicated that "[r]ape is unquestionably among the most severe forms of sexual harassment" and that "[b]eing raped by a business associate, while on the job, irrevocably alters the conditions of the victim's work environment." *Id.* (quoting *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002)). There are questions of fact as to whether Plaintiff consented to the 2013 sexual encounters, which may inform the question of whether the work environment was objectively or subjectively abusive. However, Plaintiff's evidence easily overcomes a motion for summary judgment on the "pervasive or severe" element.

### C. Employer Liability

Williams was merely Plaintiff's co-worker and did not supervise her in any manner. Therefore, to impose Title VII liability upon Defendant for Williams' actions, Plaintiff must prove that Defendant "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186

(10th Cir. 2007). This is because employers are not strictly liable for co-worker harassment and may only be found liable on a negligence theory. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998) ("In cases involving harassment by co-workers, as opposed to harassment perpetrated by supervisory employees, the only basis for employer liability available is a negligence theory . . . ."); *Cox v. Council for Developmental Disabilities, Inc.*, No. CIV-12-0183-HE, 2013 WL 647390, at *2 (W.D. Okla. Feb. 21, 2013) (analyzing whether employer took reasonable remedial measures after report of co-worker's rape of another co-worker).

Defendant did not move for summary judgment based on the absence of employer liability under the case law explained above. Instead, Defendant focused on Plaintiff's inability to prove the "pervasive or severe" element. Defendant cited *Renner* and raised the "employer liability" argument for the first time in its reply brief. The Court finds it improper to consider a summary judgment argument or theory first raised in a reply to which Plaintiff lacked a meaningful opportunity to respond. *See United States v. Herget*, 585 F. App'x 948, 951 (10th Cir. 2014) (argument raised for first time in reply brief in district court considered waived on appeal). The Court observes, however, that Plaintiff bears the burden of proving employer liability – *i.e.*, Defendant's negligence in response to notice of the alleged harassment – at trial.

Defendant also appears to assert, for the first time in its reply brief, a *Faragher/Ellerth* affirmative defense. (Def.'s Reply 10-11 (citing both cases and discussing absence of a "tangible employment action," which is a term of art relevant to this affirmative defense).) The Court will not consider this defense for purposes of summary judgment because it was raised for the first time in the reply brief. The Court further finds that the defense has no application to the facts and may not be presented at trial. This defense, upon which an employer bears the burden of proof, applies to

cases involving sexual harassment by a supervisor, rather than by a co-worker. *See Loudermilk v. Stillwater Milling Co.*, 551 F. Supp. 2d 1281, 1287-88 (N.D. Okla. 2008) (explaining *Faragher/Ellerth* affirmative defense in case involving alleged sexual harassment by supervisor).[5]

## IV. Negligent Supervision

Under Oklahoma law, an employer may be held liable for negligently supervising an employee. *New Hampshire v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla.1999). Such a claim "is based on an employee's harm to a third party through employment." *Id.* The third-party victim must show that, at the critical time of the tortious incident, "the employer had reason to believe that the person would create an undue risk of harm to others." *Id.* "Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *Id.*

In this case, Plaintiff bears the burden of proving Defendant had prior knowledge of Williams' propensity to commit sexual assault against Plaintiff while they worked together at the BOK Center. The "tortious incident" for which Plaintiff seeks recovery is the closet incident. Plaintiff contends Defendant was negligent in failing to prevent this incident because: (1) she reported the 2013 rapes to Welch immediately after they occurred; (2) although Plaintiff admittedly denied the phone report made by her fiancé, Defendant took substantial steps to keep Plaintiff and Williams apart, indicating it had notice of the risk that he would assault Plaintiff; and (3) the first time they were scheduled to work together following the 2013 incidents, Williams assaulted her for a third time.

---

[5] The Court assumes Defendant cited this line of cases in error. A *Faragher/Ellerth* defense creates a significantly greater burden for a defendant, and shifts a burden of proof to a defendant, because the alleged harasser is a supervisor.

Questions of fact preclude summary judgment as to negligent supervision. Plaintiff's testimony as to when and in what manner she reported the rapes to Welch is less than clear. However, construed favorably and assuming a jury would credit Plaintiff's testimony, a jury may find Plaintiff reported the rapes to Welch at some point in time prior to May of 2014 and that Defendant therefore had actual or constructive knowledge of Williams' propensity to sexually assault her. It certainly weakens Plaintiff's negligence case that she denied the report by her fiancé when initially questioned by Curd and Shelton, and a jury may conclude Defendant had insufficient prior knowledge to be liable for Williams' actions in May of 2014. However, given that Curd and Shelton were at least aware of some report of assault, were aware of Plaintiff's limited mental abilities, and made the decision to take measures to keep Williams and Plaintiff separated, a jury could also conclude that Defendant was aware of the risk Williams posed to Plaintiff and negligently supervised him in May of 2014.

**V.     Conclusion**

Defendant's Motion for Summary Judgment (Doc. 30) is DENIED as to both remaining claims. For reasons explained in footnotes 2 and 4, parts 7 and 9 of Defendant's Motion in Limine (Doc. 43) are DENIED. The remaining parts of Defendant's motion in limine will be resolved at the pretrial conference.

**Dated this  24th day of March, 2017.**

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**